817 F.2d 1338
 47 Fair Empl.Prac.Cas. 865,
43 Empl. Prac. Dec. P 37,062,
23 Fed. R. Evid. Serv. 17
Gerard A. CASSINO and Sally Cassino, Plaintiffs-Appellees,
v.
REICHHOLD CHEMICALS, INC., a New York corporation,
Defendant-Appellant.
 No. 85-4182.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1987.
Decided May 15, 1987.
 
 Hugh McGavick, Neil J. Hoff, Tacoma, Wash., for plaintiffs-appellees.
 Patrick B. Mooney and Daniel H. Williams, III, Buffalo, N.Y., and Bart Waldman and Philip S. Morse, Seattle, Wash., for defendant-appellant.
 Appeal from the United States District Court for the Western District of Washington.
 Before GOODWIN, SCHROEDER and FARRIS, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 Reichhold Chemicals, Inc. appeals a jury verdict awarding Gerard Cassino $492,000 in damages under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq. Reichhold contends that the trial court made a number of erroneous evidentiary rulings and errors in jury instructions. The principal issues on liability involve the admissibility of Reichhold's proposed "settlement agreement," whether the district court should have given a pretext instruction, and the admissibility of certain lay witness opinion testimony. On damages, we are asked to review the sufficiency of the district court's mitigation instruction, the exclusion of Reichhold's expert testimony regarding Cassino's mitigation efforts, the propriety of the front pay award, and the jury's calculation of liquidated damages. We reverse and remand for a new trial on damages only.
 
 
 2
 Cassino began working for Reichhold in 1957 as a chemist, and later became human resources director for Reichhold's western region. In 1981 Reichhold's board of directors hired new management to reorganize the company. The division for which Cassino worked was disbanded and its functions were reassigned to other divisions.
 
 
 3
 Cassino was fifty-two years old in June 1983 when he was one of sixteen employees fired from Reichhold's plant in Tacoma, Washington. Fourteen of the sixteen employees were over the age of forty. Five weeks before Cassino was fired, Reichhold's president and vice president for human resources spoke at a meeting of Tacoma employees. The officers stated, among other things, that the average age of Reichhold employees was forty-seven, that the company was considering improving its pension plan, and that the company was planning to institute a college recruiting program. The vice president also spoke at a meeting for Reichhold officials held at approximately the same time as the Tacoma employees' meeting, and stated that the company wanted to reduce the average age of its workforce.
 
 
 4
 Reichhold officials, including the vice president for human resources, met with Cassino and informed him that he was fired and that the company was going to handle labor negotiations from its White Plains, New York, office. During the meeting, Reichhold offered Cassino a document entitled "Settlement Agreement and General Release." The document, which Cassino refused to sign, offered $18,000 in exchange for Cassino's release of all claims against Reichhold "including, but not limited to, rights under federal, state or local laws prohibiting age or other forms of discrimination...." Shortly after Cassino left the company, Reichhold hired a thirty-two-year-old as its corporate director of labor relations in White Plains.
 
 
 5
 Cassino filed this suit in federal court alleging that his termination was based on age in violation of the ADEA and Washington's anti-discrimination laws. A jury verdict in Cassino's favor awarded him $81,000 in backpay, $150,000 in front pay, $246,000 in liquidated damages, and $15,000 in damages on state law claims not in issue on appeal.
 
 LIABILITY
 A. Termination Agreement
 
 6
 The district court admitted into evidence the "Settlement Agreement and General Release" that Reichhold offered to Cassino at his termination meeting. We review evidentiary rulings for abuse of discretion and will not reverse absent some prejudice. Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986).
 
 
 7
 The issue is whether the document was inadmissible under Fed.R.Evid. 408. That rule provides that evidence of offers "to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." See also E. Cleary, McCormick on Evidence Sec. 274 (3rd ed. 1984) (offers to compromise actual disputes inadmissible). The district court admitted the agreement into evidence because Cassino had not asserted any claim at the time Reichhold asked for the release and, therefore, Rule 408 did not bar its admission. We find no abuse of discretion in admitting the proposed agreement under the circumstances of this case.
 
 
 8
 That conclusion follows from our review of many cases arising under the ADEA in which employers have sought releases of claims in return for monetary payment to dismissed employees. Our review reflects that such offers arise in at least two materially distinct contexts. The first is in connection with the negotiation and settlement of disputes arising after the termination. In these cases, an employee relinquishes the right to a judicial determination of an ADEA claim in return for valuable consideration after having asserted that he or she is a victim of illegal discrimination. See In re Lybarger, 793 F.2d 136, 137 (6th Cir.1986) (settlement of ADEA claim morning of scheduled trial); Runyan v. Nat'l Cash Register Corp., 787 F.2d 1039, 1040-41 (6th Cir.) (en banc) (release of all claims after allegation of age discrimination and acceptance of increased compensation for duration of consulting agreement), cert. denied, --- U.S. ----, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). Such settlement offers are inadmissible to prove liability pursuant to Rule 408.
 
 
 9
 A second situation appearing in ADEA cases, and one more similar to this case, occurs when an employment relationship is terminated and the employer offers a contemporaneous severance pay package in exchange for a release of all potential claims, including claims for discriminatory acts that may have occurred at or before the termination. Such termination agreements are generally made a part of the record in the case and are considered relevant to the circumstances surrounding the alleged discriminatory discharge itself. The termination agreements, therefore, are probative on the issue of discrimination. See, e.g., Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 540 (8th Cir.1987) (termination agreement offering $39,000 severance pay and six months medical insurance premiums for general release); Moore v. McGraw Edison Co., 804 F.2d 1026, 1028-30 (8th Cir.1986) (termination agreement offering several employees severance pay for liability release); Sherrod v. Sears, Roebuck & Co., 785 F.2d 1312, 1314-15 (5th Cir.1986) (termination agreement offering approximately $5,000 in addition to accrued vacation and service allowances for release); Pruet Production Co. v. Ayles, 784 F.2d 1275, 1278 (5th Cir.1986) (termination agreement offering $120,000 if employee signed release). See generally R. Silberman & C. Bolick, The EEOC's Proposed Rule on Releases of Claims under the ADEA, 37 Lab.L.J. 195, 195-96 (1986) (discussing distinction between settlement agreements and termination agreements).
 
 
 10
 Reichhold cites no authority holding that termination agreements such as those cited above are inadmissible. This is no doubt because the protections of Rule 408 were designed to encourage the compromise and settlement of existing disputes. See United States v. Contra Costa County Water Dist., 678 F.2d 90, 92 (9th Cir.1982); Fed.R.Evid. 408 advisory committee note. See also Runyan, 787 F.2d at 1045 (upholding settlement of ADEA claim through a private, unsupervised release to encourage voluntary resolution of disputes). Where, as here, the employer tries to condition severance pay upon the release of potential claims, the policy behind Rule 408 does not come into play. Rule 408 should not be used to bar relevant evidence concerning the circumstances of the termination itself simply because one party calls its communication with the other party a "settlement offer."
 
 
 11
 Such communications may also tend to be coercive rather than conciliatory. Thus, courts have observed that while an attempt to mitigate the harshness of a decision to terminate an employee may be commendable, "courts should not allow employers to compromise the underlying policies of the ADEA by taking advantage of a superior bargaining position or by overreaching." Runyan, 787 F.2d at 1044-45. "The remedial goals of the ADEA cannot be circumvented by an employer's coercive practices no matter how subtle the form." Felty v. Graves-Humphreys Co., 785 F.2d 516, 520 (4th Cir.1986). The district court, therefore, did not abuse its discretion in admitting the proposed termination agreement here.
 
 B. Pretext Instruction
 
 12
 Reichhold contends that the district court's refusal to give its proposed jury instructions on pretext requires reversal. It argues that the court should have instructed the jury that it was Cassino's burden to prove that the reorganization at the Tacoma plant was a pretext for firing older employees.
 
 
 13
 To prove a prima facie case of age discrimination, the plaintiff must ordinarily prove that (1) the plaintiff was between forty and seventy years old, (2) the plaintiff was fired, (3) the plaintiff was performing the job satisfactorily, and (4) the plaintiff was replaced by a substantially younger person with equal or inferior qualifications. Palmer v. United States, 794 F.2d 534, 537 (9th Cir.1986). Once the plaintiff establishes a prima facie case of age discrimination, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the discharge. Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 24-25, 99 S.Ct. 295, 295-96, 58 L.Ed.2d 216 (1978) (per curiam). If the employer produces sufficient evidence to rebut the plaintiff's prima facie showing, the plaintiff may attempt to show that the proffered reasons are pretextual. The plaintiff may do so "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Sutton v. Atlantic Richfield Co., 646 F.2d 407, 412 (9th Cir.1981) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).
 
 
 14
 To prove a violation of the ADEA, the plaintiff must prove that age "made a difference in determining whether or not the plaintiff was retained or discharged." Kelly v. American Standard, Inc., 640 F.2d 974, 984-85 (9th Cir.1981). See also Cancellier v. Federated Dep't Stores, 672 F.2d 1312, 1316 (9th Cir.) ("it is not enough that age discrimination be present or even that it figure in the decision to fire; age must 'make a difference' between termination and retention"), cert. denied, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). Age, however, need not be the sole factor in a discharge. Id. The jury, therefore, must decide whether age was the "determining factor" in an employer's decision to discharge an individual, or, whether the employee would not have been discharged "but for" his age. Id.; Loeb v. Textron, Inc., 600 F.2d 1003, 1019 (1st Cir.1979); Laugesen v. Anaconda Co., 510 F.2d 307, 317 (6th Cir.1975).
 
 
 15
 On the issue of liability in this case, the district court instructed the jury as follows:
 
 
 16
 This is a suit by plaintiff alleging violations of the Federal and State Laws against age discrimination. These acts make it an unlawful practice for any employer to discharge a person because of that person's age.
 
 
 17
 * * *
 
 
 18
 To recover for discrimination in conditions or terms of employment the Plaintiff must prove by a preponderance of the evidence that:
 
 
 19
 1. He belongs to a protected group.
 
 
 20
 2. He was the subject of age discrimination, and but for his age, he would not have been terminated by the Defendant.
 
 
 21
 3. Defendant intentionally discriminated against Plaintiff because of his age.
 
 
 22
 4. That as a direct proximate result of such age discrimination, Plaintiff sustained damages.
 
 
 23
 In evaluating jury instructions, this court considers the charge as a whole to determine whether it is misleading or misstates the law to the prejudice of either party, and will not reverse a judgment because of an erroneous instruction if the instructions fairly and adequately cover the issues. Jenkins v. Whittaker Corp., 785 F.2d 720, 730 (9th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 324, 93 L.Ed.2d 296 (1986).
 
 
 24
 The jury instructions given by the district court below correctly stated that plaintiff must prove that he would not have been terminated "but for his age."[1] Reichhold proposed an additional jury instruction, not given by the court, which provided in part: "So long as Reichhold states a legitimate reason for the discharge of Mr. Cassino, Mr. Cassino has the burden of proving that his age was a determining factor in Reichhold's decision and that Reichhold's stated reason was merely a pretext for discrimination." Reichhold argues that because it articulated a legitimate non-discriminatory reason for Cassino's discharge, the Tacoma plant reorganization, it was entitled to a pretext instruction.
 
 
 25
 This circuit has not yet considered an argument like Reichhold's that it is reversible error not to give a pretext instruction. The Tenth Circuit, however, has squarely rejected this contention and held that it would have been error to give a pretext instruction. EEOC v. Prudential Fed. Sav. & Loan Ass'n, 763 F.2d 1166 (10th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). In Prudential Federal, the court affirmed a trial court's refusal to instruct on pretext. The instruction given, similar to that given in this case, was that the plaintiff must prove that "the age of the employee in question was a determinative factor in defendant's decision to discharge him. That is ... but for his age, he would not have been so treated." Id. at 1170. The court held that this instruction accurately stated the legal standard. To instruct on pretext, it reasoned further, might mislead the jury to believe that the plaintiff must prove that the employer's stated nondiscriminatory reason was false and that age was the sole factor in the decision. Id. Its reasoning is persuasive. But see Golomb v. Prudential Ins. Co. of America, 688 F.2d 547, 551-52 (7th Cir.1982) (holding that it was not error to instruct on pretext); Loeb, 600 F.2d at 1017-18 (stating that, where appropriate, jury should be instructed on all steps of McDonnell Douglas formula including pretext).
 
 
 26
 The Eighth and the Sixth Circuits have approved jury instructions that omitted any mention of pretext and focused only on the plaintiff's burden of proving that the challenged action would not have been taken but for the plaintiff's age. Grebin v. Sioux Falls Indep. School Dist. No. 49-5, 779 F.2d 18, 20-21 & n. 1 (8th Cir.1985); Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1180 & n. 5 (6th Cir.1983). The jury instructions given in these two cases were similar to, although more detailed than, the instructions given in this case.
 
 
 27
 As in Grebin and Blackwell, we find no reversible error in the district court's refusal to instruct the jury on pretext. The jury was instructed that it was Cassino's burden to prove that he would not have been fired "but for his age." Because the instructions reviewed as a whole set forth the essential elements that Cassino had to prove in order to prevail, the court did not err in refusing to give Reichhold's proposed pretext instructions. See Jenkins, 785 F.2d at 730.
 
 C. Lay Testimony
 
 28
 Reichhold argues that the district court abused its discretion in allowing two lay witnesses to testify that they, Cassino, and other Reichhold employees were terminated because of age. Cassino concedes that the court erred in allowing such speculative opinion testimony. See Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1254-55 (9th Cir.1982); Gray v. Shell Oil Co., 469 F.2d 742, 749-50 (9th Cir.1972), cert. denied, 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973). See also Fed.R.Evid. 602 (requiring witnesses to have personal knowledge of matters about which they testify). The admission of such testimony, however, was not reversible error. Although the witnesses testified that they could think of no reason other than age for the terminations, Reichhold presented extensive testimony regarding another reason, i.e., the company's reorganization.
 
 
 29
 Similarly, Reichhold's assignment of error to the district court's refusal to allow oral objections during one-half day of testimony, the exclusion of the video tape shown at the Tacoma employees' meeting, and the admission of Cassino's testimony that Reichhold should have hired him for other positions, if erroneous, do not require reversal. No prejudice has been shown. Kisor, 783 F.2d at 1340; Haddad v. Lockheed Cal. Corp., 720 F.2d 1454, 1459 (9th Cir.1983).
 
 DAMAGES
 
 30
 Reichhold contends that the district court committed several errors with regard to Cassino's backpay, front pay, and liquidated damage awards. We agree with Reichhold that there were errors that require reversal of the judgment as to damages.
 
 A. Mitigation
 
 31
 An ADEA plaintiff must attempt to mitigate damages by exercising reasonable care and diligence in seeking reemployment after termination. Jackson v. Shell Oil Co., 702 F.2d 197, 201 (9th Cir.1983). The defendant bears the burden of showing that there were suitable positions available and that the plaintiff failed to use reasonable care in seeking them. Id. at 202. Any wages the plaintiff actually earned after termination, plus the amount the plaintiff would have earned if he had made reasonable efforts, must be subtracted from a backpay award. See Thorne v. City of El Segundo, 802 F.2d 1131, 1137 (9th Cir.1986); Sangster v. United Air Lines, Inc., 633 F.2d 864, 867-68 (9th Cir.1980), cert. denied, 451 U.S. 971, 101 S.Ct. 2048, 68 L.Ed.2d 350 (1981); Sias v. City Demonstration Agency, 588 F.2d 692, 696-97 (9th Cir.1978).
 
 
 32
 Cassino testified at length about his efforts to find another job after Reichhold terminated his employment. Reichhold offered rebuttal expert testimony as to the reasonableness of Cassino's mitigation efforts and the availability of jobs. The district court, however, refused to allow the testimony of Reichhold's expert, William Spartin.
 
 
 33
 Spartin's testimony was relevant to a disputed issue--the reasonableness of Cassino's mitigation efforts and the availability of jobs. His testimony might have helped the jury to understand how personnel managers generally search for jobs. See Fed.R.Evid. 702 advisory committee note (use of expert testimony determined on basis of assisting trier of fact); J. Weinstein & M. Berger, Weinstein's Evidence p 702 at 702-7 (rev. ed. 1985) (expert testimony helpful to jury should generally be admitted). More important, however, Spartin's testimony would have assisted Reichhold in carrying its burden of proving a failure to mitigate and in rebutting Cassino's testimony that he searched diligently for other work. See Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 530 (9th Cir.1986); Hingson v. Pacific Southwest Airlines, 743 F.2d 1408, 1412-13 (9th Cir.1984). The evidence was therefore admissible and its exclusion was prejudicial to Reichhold. The district court's refusal to permit Spartin's expert testimony was an abuse of discretion.
 
 
 34
 Reichhold also contends that the district court erred in instructing the jury on mitigation. Cassino concedes that the mitigation instruction was inadequate. It read: "Plaintiff has a duty to mitigate his damages. That is, he has a duty to attempt to earn money from other sources during the time when he was not employed by defendant." This instruction did not adequately explain the law. It did not explain that the jury had to determine whether there were suitable positions available that Cassino could have found and whether Cassino exercised reasonable diligence in seeking them. Jackson, 702 F.2d at 202. In addition, the mitigation instruction did not inform the jury that it should reduce the damage award if it determined that Cassino's efforts to find another job were not reasonable. Sangster, 633 F.2d at 867-68. See Instruction No. 14.05J, Manual of Model Jury Instructions for the Ninth Circuit (1985).[2] These failures were all prejudicial to Reichhold and require reversal of the backpay award.
 
 B. Front Pay
 
 35
 The ADEA provides that "[i]n any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate ... including without limitation judgments compelling employment, reinstatement or promotion...." 29 U.S.C. Sec. 626(b). In discriminatory discharge cases, the decision whether to order reinstatement is within the discretion of the trial court. Cancellier, 672 F.2d at 1319. Although reinstatement is the preferred remedy in these cases, it may not be feasible where the relationship is hostile or no position is available due to a reduction in force. Thorne, 802 F.2d at 1137; Fadhl v. City and County of San Francisco, 741 F.2d 1163, 1167 (9th Cir.1984); Cancellier, 672 F.2d at 1319. Under such circumstances, an award of future damages or "front pay" in lieu of reinstatement furthers the remedial goals of the ADEA by returning the aggrieved party to the economic situation he would have enjoyed but for the defendant's illegal conduct. See Prudential Federal, 763 F.2d at 1173; Cancellier, 672 F.2d at 1319. Thus, front pay is an award of future lost earnings to make a victim of discrimination whole. Maxfield v. Sinclair Int'l, 766 F.2d 788, 795-96 (3d Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); Whittlesey v. Union Carbide Corp., 742 F.2d 724, 727-28 (2d Cir.1984).
 
 
 36
 The jury in this case was instructed on the measure of damages for front pay. The district court explained that "Front pay is compensation for the loss of future salary and benefits." Aside from this cursory definition, however, the jury was merely told that "If you find age discrimination ..., you may award front pay."
 
 
 37
 It is clear that front pay awards, like backpay awards, must be reduced by the amount plaintiff could earn using reasonable mitigation efforts. See Thorne, 802 F.2d at 1137. As the Third Circuit pointed out in Maxfield, 766 F.2d at 796, the plaintiff's duty to mitigate must serve as a control on front pay damage awards. See also Prudential Federal, 763 F.2d at 1173 (failure to mitigate may limit front pay award); Whittlesey, 742 F.2d at 728 (duty to mitigate significantly limits front pay). Thus, front pay is intended to be temporary in nature. An award of front pay "does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing." Whittlesey, 742 F.2d at 728. The jury in this case, in effect, without instruction on mitigation, found that Cassino was entitled to front pay from the time of trial until the time he would have retired. Because of this defect, the front pay award also is reversed.
 
 
 38
 We do not find persuasive Reichhold's remaining challenges to the front pay award. First, Reichhold contends that the district court erred in failing to instruct the jury that a finding of hostility was a prerequisite to a front pay award. The court's failure to instruct on hostility was not error because the decision whether to order the equitable remedy of reinstatement or, in the alternative, to award front pay, is a decision for the trial court. Maxfield, 766 F.2d at 796 (citing Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1448 (11th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); Davis v. Combustion Eng'g, Inc., 742 F.2d 916, 923 (6th Cir.1984); Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1100-01 (8th Cir.1982)). If the court concludes that reinstatement is not feasible, the jury then decides the amount of the front pay award. Id.
 
 
 39
 Moreover, the district court did not abuse its discretion in awarding front pay rather than reinstatement. Notwithstanding Cassino's former supervisor's testimony that he still considers Cassino a friend, the record indicates that some hostility developed between Reichhold and Cassino during the litigation. See Whittlesey, 742 F.2d at 728 (reinstatement inappropriate because of hostility generated by litigation).
 
 
 40
 Second, Reichhold argues that Cassino failed to present competent evidence establishing future damages. Specifically, Reichhold maintains that Cassino's lay opinion testimony about future earnings and benefits, and the application of inflation and discount rates to those figures, was inadmissible because Cassino was unqualified to make such calculations.
 
 
 41
 Although the Ninth Circuit has not addressed the issue of what constitutes adequate inflation and discount rate evidence, several circuits have adopted the view that as long as the jury is properly instructed, expert testimony is not an absolute prerequisite to submitting to the jury the issue of future lost earnings and their reduction to present value. Bonura v. Sea Land Service, Inc., 505 F.2d 665, 668-69 (5th Cir.1974); Heater v. Chesapeake & O. Ry., 497 F.2d 1243, 1249-50 (7th Cir.), cert. denied, 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974); Duncan v. St. Louis-S.F. Ry., 480 F.2d 79, 87 (8th Cir.), cert. denied, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973); Baynum v. Chesapeake & O. Ry., 456 F.2d 658, 660-61 (6th Cir.1972). Contra Ballantine v. Central R.R., 460 F.2d 540, 543-44 (3d Cir.) (requiring expert or actuarial evidence concerning present value of future loss or mathematical guidance on method of reducing award to present value before submitting issue to jury), cert. denied, 409 U.S. 879, 93 S.Ct. 133, 34 L.Ed.2d 133 (1972). Courts that do not require expert testimony reason that the effect of inflation and interest rates on the value of money is within the common knowledge of jurors and that jurors are sufficiently intelligent to reduce an award to present value if properly instructed. See Bonura, 505 F.2d at 669; Baynum, 456 F.2d at 661. Here, Reichhold does not dispute the adequacy of the jury instruction on present value, and the record shows that the instruction adequately defined the phrase and sufficiently guided the jury in reducing the front pay award to present value.
 
 
 42
 Moreover, expert testimony is not required to prove what the plaintiff would receive in future earnings and raises. See Maxfield, 766 F.2d at 797 (plaintiff proved future damages in ADEA suit in absence of expert testimony); Kolb v. Goldring, Inc., 694 F.2d 869, 873 (1st Cir.1982) (projection of future raises and earnings in ADEA suit can be based on patterns of past increases). Here, Cassino testified about his projected earnings based primarily on his own periodic pay increases during more than twenty years of employment at Reichhold. Therefore, Cassino's evidence was sufficient to establish the loss of future earnings and benefits.
 
 C. Liquidated Damages
 
 43
 Reichhold contends that the award of liquidated damages must be reversed because Cassino did not produce substantial evidence that Reichhold willfully discriminated against him. See Jackson, 702 F.2d at 200. It also maintains that the jury miscalculated the amount of liquidated damages.
 
 
 44
 The ADEA expressly incorporates the remedial provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 216(b). 29 U.S.C. Sec. 626(b). Under FLSA's remedial provisions, as incorporated into the ADEA, a violating employer is liable for wages and benefits from the date of the wrongful termination until the date of trial, as well as "an additional equal amount as liquidated damages" if the violation was willful. 29 U.S.C. Secs. 216(b), 626(b). See Kelly, 640 F.2d at 977-78. A willful violation occurs when the employer "knew or showed reckless disregard" for whether the ADEA prohibited its conduct. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985); Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1495 (9th Cir.1986). Willfulness may be shown by circumstantial evidence, including statistical evidence and discriminatory statements. Kelly, 640 F.2d at 981.
 
 
 45
 The jury's finding of willful age discrimination is supported by substantial evidence. Almost all of the fired Tacoma employees were over the age of forty. Testimony revealed that several high-level Reichhold officials, including those who fired Cassino, were concerned about the comparatively high average age of Reichhold's workforce and had made public statements to that effect. In addition, the termination agreement that Reichhold offered Cassino specifically required Cassino to waive his right to sue for age discrimination in return for severance pay. From this evidence, the jury could infer that Reichhold knew or showed reckless disregard for whether firing Cassino violated the ADEA. See Thurston, 469 U.S. at 128, 105 S.Ct. at 624; Gilchrist, 803 F.2d at 1495. See also Archambault v. United Computing Sys., Inc., 786 F.2d 1507, 1514 (11th Cir.1986) (age-related comments evidence of willfulness).
 
 
 46
 As Cassino concedes, however, the jury incorrectly computed the amount of liquidated damages. By the express terms of the statute, liquidated damages are an additional amount equal to the backpay and benefits award. 29 U.S.C. Secs. 216(b), 626(b). See also Mitroff v. Xomox Corp., 797 F.2d 271, 279 (6th Cir.1986) (liquidated damages, if awarded, "must be equal to the back pay award") (emphasis in original). Here, the jury was properly instructed that it could award Cassino liquidated damages "up to an amount equal to unpaid wages to which you find him entitled." Yet, the jury's special interrogatory and verdict form clearly shows that instead of awarding liquidated damages in an amount equal to the $81,000 backpay award, the jury simply doubled the entire award, including the front pay and compensatory damage awards, to reach its $246,000 figure. Accordingly, on remand, after computing the backpay award in light of the duty to mitigate, the jury should be instructed to award as liquidated damages, if it determines such an award appropriate, an amount not to exceed the backpay and benefits award.
 
 
 47
 The district court is affirmed in part and reversed in part. The award of damages is vacated and the matter remanded for a new trial on damages to be conducted in accordance with this opinion. Each party is to bear its own costs.
 
 
 
 [1]
 Reichhold argues that the "but for" instruction was nevertheless inadequate because the district court did not explain to the jury what this standard meant. See Cancellier, 672 F.2d at 1315-16 n. 2; Kelly, 640 F.2d at 984-85. Although we are "reluctant" to affirm age discrimination verdicts based on instructions different from those approved in Kelly, we will do so when the error is more probably than not harmless. Cancellier, 672 F.2d at 1316-17. As in Cancellier, the district court's instruction here was an "unelaborated version of the correct standard," and the district judge's failure to give further guidance as to the meaning of the "but for" test was harmless error. Id
 
 
 [2]
 The model mitigation instruction provides:
 If you find that defendant committed unlawful age discrimination, plaintiff is entitled to damages, consisting of the wages he would have received if defendant had not discharged him. This amount consists of the back wages and employee benefits plaintiff would have received from the date defendant discharged him to the date of this trial. From that amount, you should then subtract the amount of wages, or earnings he received from other jobs during the same period. The amount to be subtracted would also include any severance pay or vacation pay plaintiff received after his discharge.
 If defendant proves that plaintiff unjustifiably failed to take a new job of like kind, status and pay which was available to him, or failed to make reasonable efforts to find a new job, you should subtract from his damages any amount he could have earned in a new job after his discharge.