942 F.2d 793
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Corine PROCTOR, Plaintiff-Appellant, Cross-Appellee,
v.
CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, a Delaware
corporation, Defendant-Appellee, Cross-Appellant.
 Nos. 89-35650, 89-35676.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 8, 1991.
Decided Sept. 5, 1991.
 
 Before WIGGINS, BRUNETTI and THOMAS G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Both parties appeal from the district court's order affirming the magistrate's entry of judgment for damages following its finding that Consolidated Freightways Corporation failed to make a good faith effort to accommodate its employee's religious beliefs. We reverse.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 * This case is before this court for the second time. In the first appeal, (Proctor I ) reported at 795 F.2d 1472 (9th Cir.1986), we reversed a summary judgment entered in favor of the employer, Consolidated Freightways Corporation (Consolidated), on the basis that there was a triable issue of fact as to whether or not Consolidated had made a good faith effort to accommodate the religious faith of its employee Corine Proctor (Proctor). On remand, the trial court found that Consolidated had not made a good faith effort to accommodate Proctor's religious beliefs and therefore had discriminated against her. Consolidated does not challenge that determination here.
 
 
 4
 In view of the court's opinion in Proctor I, we recite only those facts necessary to state the basis of the trial court's decision. During Proctor's work with Consolidated as a grade 2 employee, Consolidated was able to accommodate Proctor's inability to work on Saturday due to her observance of her faith's Sabbath from sundown Friday until sundown Saturday. Consolidated was able to accommodate her because of the number of other grade 2 clerks who could do the Saturday work which Proctor was unable to do.
 
 
 5
 When a grade 3 Balancing Clerk position opened, Proctor "bid" on the job. Proctor was the strongest contender for the position due to her seniority. However, there were fewer employees in the grade 3 position and Consolidated would have less flexibility in accommodating Proctor's religious faith. Consolidated awarded her the job, even though she refused to sign a statement acknowledging that she might be required to work on Saturdays.
 
 
 6
 On May 18 and September 12, 1981, Consolidated informed Proctor that Balancing Clerks would be required to work on the following Saturday. On both occasions, Proctor told Consolidated that she would not work on her Sabbath. On both occasions, Consolidated secured volunteers to work overtime during the week, thus releasing the obligation for Saturday work. On September 16, 1981, Consolidated again informed Proctor that overtime work would be required on the following Saturday and she again informed them that she would not work on her Sabbath. She did not report for work on Saturday and was suspended for several days. The same events happened the following week. As a result, Consolidated fired Proctor.
 
 
 7
 Following her termination, Proctor was unable to find equivalent employment. The trial court found that she had made good faith attempts to find suitable employment. Her present income is about 50% of what it would have been in her grade 3 position.
 
 
 8
 After concluding that Consolidated was liable for religious discrimination, the trial court awarded backpay at the grade 3 rate for the period from the termination until the date of the judgment. However, the court reduced this amount by what she would have made had she retained her grade 2 position. The grade 2 earnings were calculated to be about 90% of the grade 3 earnings. The trial court further awarded "front pay" for an approximate seventeen year period from Proctor's then age of 45 until age 62, on the basis that reinstatement was not a viable alternative because of hard feelings in the workplace and that the lapse of time from the termination indicated that Proctor was not going to find equivalent employment during the balance of her working life. The front pay was again calculated on the difference between the grade 3 and the grade 2 position.
 
 
 9
 Proctor appeals, contending that it was improper to deduct the amount she would have made in the grade 2 position from the gross pay she would have earned in the grade 3 position. Proctor also appeals the dismissal of her state law wrongful discharge claim. Consolidated cross-appeals, contending that it was improper to award front pay for a seventeen year period.
 
 II
 
 10
 Consolidated argued at trial that the backpay computation should be the difference in compensation between the grade 3 position she was briefly promoted to and her previous position at grade 2. The magistrate stated Consolidated's position as follows:
 
 
 11
 To reach this position, Consolidated argues that when Proctor bid into the grade 3 position, she was aware that her employer could not reasonably accommodate her religious principle in that position and attempted to persuade her to bid on another grade 3 position or return to her previous job. Under these circumstances "it is only reasonable to expect and require that an employee aggrieved over lack of accommodation in a newly bid position will accept the employer's offer to return to the former position and seek vindication by legal action during the employment relationship".... Consolidated concludes that Proctor, by refusing to return to her old position, "forced" her termination and therefore on the backpay issue she should be treated as if she had received her pay as a grade 2 clerk.
 
 
 12
 The trial court declined to follow Consolidated's constructive discharge analogy, but did implicitly accept Consolidated's position. The court said:
 
 
 13
 However, I am persuaded, based upon the particular circumstances of this case, that an equitable result would limit backpay to the difference in compensation between her former grade 2 job and her new position of balancing clerk. I recognize that Proctor had a legitimate right to improve her position with the company and to bid on the balancing clerk job, and that, as I have found, Consolidated did not make a reasonable effort to accommodate her religious belief. On the other hand, when it comes to the award of damages there are additional facts which cause me to reject the amount of backpay sought by Proctor. She had worked as a balancing clerk in earlier years and she was aware that there were a limited number of clerks in that category, and that there was overtime work on Saturday on occasion. When she bid on the job she knew that management took the position that there would be overtime work on some Saturdays and that this requirement collided with her devotion of Saturday to her religion. Her supervisor, John Grieve, had worked out an accommodation for her in the grade 2 position, and this job was available to Proctor.
 
 
 14
 (Emphasis added.)
 
 
 15
 The trial court essentially concluded Proctor had forced the confrontation on Saturday work in lieu of pursuing her remedies under the collective bargaining agreement. We must determine whether the court was acting within its discretion in calculating the backpay award based on the difference between the job she was properly promoted to and the position which she left. Backpay awards are accorded to the sound discretion of the trial court. Albermarle Paper Co. v. Moody, 422 U.S. 405 (1975). The court's award of backpay is reviewed for an abuse of that discretion. Sias v. City Demonstration Agency, 588 F.2d 692 (9th Cir.1978).
 
 
 16
 Section 706(g) of the Civil Rights Act of 1964, 78 Stat. 261, 42 U.S.C. § 2000e-5(g), governs the award of backpay in Title VII cases such as this. Section 706(g) provides, in pertinent part:
 
 
 17
 If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, ... hiring of employees, with or without backpay, ... or any other equitable relief as the court deems appropriate.... Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the backpay otherwise allowable.
 
 
 18
 42 U.S.C. § 2000e-5(g). The Supreme Court has said that backpay is not an automatic or mandatory remedy; it is one which the courts may invoke in the exercise of their sound discretion, which is equitable in nature. Nonetheless, a court must exercise this power in light of the large objectives of the act and in doing so must be guided by meaningful standards enforced by thorough appellate review. Moreover, such discretionary choices are not left to a court's inclination but to its judgment; and its judgment is to be guided by sound legal principles. Ford Motor Co. v. EEOC, 458 U.S. 219, at 226-27 (1982).
 
 
 19
 The primary goal of Title VII is to end discrimination. Ford Motor Co. v. EEOC, 458 U.S. at 230; see Albermarle Paper Co. v. Moody, 422 U.S. at 417-18. If discrimination has occurred, Title VII aims to make the victims of unlawful discrimination whole by restoring them, so far as possible, to a position where they would have been were it not for the unlawful discrimination.
 
 
 20
 In Ford Motor Co., the Supreme Court held that if an employer unconditionally offers a claimant the job which he had previously been denied, the claimant's rejection of that offer would toll the ongoing accrual of backpay liability.
 
 
 21
 We have previously noted that Consolidated does not contest the validity of the district court's finding of liability. We emphasize that the sole question here is the quantum of damages. Consolidated argues that Proctor's conduct justifies the reduction in her backpay award by the amount of money she would have earned had she stayed in her grade 2 position.
 
 
 22
 Consolidated's position has facial appeal. The record indicates that Consolidated was able to accommodate Proctor in her grade 2 position because there were six other full-time and ten part-time data entry grade 2 clerks. However, the record also indicates that there were only two balancing clerk (grade 3) positions, which meant there was only one other clerk to perform Saturday work in that position. There was also testimony that Proctor's superiors counseled Proctor to return her grade 2 position once it became apparent to them that they would not be able to accommodate her in the balancing clerk position. Her superiors encouraged her to bid for one of the forty or more other grade 3 positions that did not require Saturday overtime from the safe haven of the grade 2 position.
 
 
 23
 The problem with Consolidated's position is that the counseling to return to the grade 2 position came after she had been promoted to grade 3. Proctor was being asked to retreat from a position she had properly applied for and been promoted to. Ford Motor Company held that the unconditional offer of the job originally denied would toll the accrual of backpay. Nothing in that case suggests that an employee who properly accepts a promotion must retreat to the former position as a condition of qualifying for a backpay award. If Consolidated wanted to terminate her accrual of backpay to settle this case, it would have had to offer her a grade 3 position, or its substantial equivalent. See Boehm v. American Broadcasting, Inc., 929 F.2d 482, 485 (9th Cir.1991). Since Consolidated did not make such an offer, it did not terminate its backpay obligation to Proctor. If the offer had been made and accepted, Proctor would have been paid at the grade 3 rate. This, then, is the amount, less offsets for other earnings, necessary to make her whole under Title VII.
 
 
 24
 Therefore, we hold that it is not within the discretion of the district court to calculate backpay based on the pay of the former position held by an employee who properly accepted a promotion to a higher position. The award to Proctor must be recalculated without deducting the wages she would have received in the grade 2 position.
 
 III
 
 25
 The district court awarded Proctor front pay for the seventeen years from her age at the time of judgment until age 62, at which time she could retire. Consolidated appeals this award, contending it was an abuse of discretion to award front pay for that long a period of time. Consolidated argues that "front pay is intended to be temporary in nature." Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338 (9th Cir.1987), cert. denied, 484 U.S. 1047 (1988).
 
 
 26
 Cassino does not preclude front pay for the period between entry of judgment and retirement. In Cassino, the employer had been found liable for damages under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. The court reversed the jury verdict for, among other things, a defect in instructions on the plaintiff's duty to mitigate his damages. In discussing front pay, the Cassino court noted the jurisdiction of the district court to grant "such legal or equitable relief as may be appropriate ... including without limitation judgments compelling employment, reinstatement or promotion...." Cassino at 1346. The court noted that the decision of whether or not to order reinstatement is within the discretion of the trial court and that although reinstatement is the preferred remedy, it may not be feasible where the relationship is hostile or where no position is available due to a reduction in force. See Thorne v. City of El Segundo, 802 F.2d at 1137.
 
 The Cassino court said:
 
 27
 Under such circumstances, an award of future damages or "front pay" in lieu of reinstatement furthers the remedial goals of the ADEA by returning the aggrieved party to the economic situation he would have enjoyed but for the defendant's illegal conduct.
 
 
 28
 817 F.2d at 1346.
 
 The court went on to say:
 
 29
 It is clear that front pay awards, like backpay awards, must be reduced by the amount plaintiff could earn using reasonable mitigation efforts.... [T]he plaintiff's duty to mitigate must serve as a control on front pay damage awards.... Thus, front pay is intended to be temporary in nature. An award of front pay "does not contemplate that a plaintiff will sit idly by and be compensated for doing nothing." ... The jury in this case, in effect, without instruction on mitigation, found that Cassino was entitled to front pay from the time of trial until the time he would have retired. Because of this defect, the front pay award also is reversed.
 
 
 30
 817 F.2d at 1347.
 
 
 31
 In context, it is clear that the defect noted by the Cassino court was that the trial court had failed to adequately instruct on mitigation. While the Cassino court did say that front pay was intended to be temporary, there is nothing in that case which indicates that the court intended to state a limit on the court's statutory authority to grant "such legal or equitable relief as may be appropriate" by imposing a time limitation on front pay awards in appropriate cases.
 
 
 32
 The district court found here that Proctor had made a "reasonable albeit unsuccessful effort to find a higher paying job." The district court also found that Proctor would continue her working career until age 62 and that it is probable that she would not be able to retrain or relocate and thereby match the income she was receiving at Consolidated. The record fully supports this finding by the district court. In this setting, the award of front pay until age 62 was within the trial court's discretion, particularly given the eight year period between the discharge and entry of judgment, during which Proctor's reasonable efforts to find equivalent employment had been unavailing.
 
 
 33
 While the time period appears long, we conclude the district court did not abuse its discretion in awarding front pay until Proctor's projected age of retirement. See Boehm v. American Broadcasting Co., Inc., 929 F.2d 482, 488 (9th Cir.1991). In addition, on remand, the district court is ordered to recalculate the front pay award in accordance with the holding of section II of this opinion.
 
 IV
 
 34
 Following this court's decision in Proctor I, the district court granted Proctor leave to amend her complaint to add a common law wrongful discharge claim. The district court later dismissed the common law claim on the basis that it was preempted by Section 301 of the Labor Management Relations Act of 1947, as necessarily intertwined with the collective bargaining agreement. This dismissal is a ruling on a question of law subject to review de novo. Vincent v. Trend Western Technical Corp., 828 F.2d 563 (9th Cir.1987). Proctor contends here that the recent Supreme Court decision of Lingle v. Norge Division of Magic Chef Inc., 486 U.S. 399 (1988), decided after the magistrate's dismissal in this case, requires reversal of the district court order.
 
 
 35
 It is not necessary to reach the impact of the Lingle case on the dismissal of Proctor's wrongful discharge action. The Oregon common law and wrongful discharge action applies only to employees hired "at will" and does not apply to employees hired pursuant to a collective bargaining agreement. Embry v. Pacific Stationery and Printing Co., 659 P.2d 436 (Ore.App.1983). See Holien v. Sears, Roebuck & Co., 689 P.2d 1292 (Ore.1984); Nees v. Hocks, 536 P.2d 512 (Ore.1975). In this case, the collective bargaining agreement did apply to Proctor at the time of her discharge and the agreement provided that employees of Consolidated would be discharged only for just cause. Therefore Oregon law did not apply to Proctor's discharge. Since the decision is correct, albeit for different reasons than stated by the trial court, it will be affirmed. Marino v. Vasquez, 812 F.2d 499 (9th Cir.1987); Alcaraz v. Block, 746 F.2d 593 (9th Cir.1984).
 
 CONCLUSION
 
 36
 The judgment is REVERSED, and the case REMANDED to the district court for further proceedings.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3