1 F.3d 1246
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Michael D. LEEDS, Plaintiff-Appellant,
v.
James E. SEXSON; Josephine Hawthorne; Robert W. Smith;
Chris L. Wheeler; William Young; et al.,
Defendants-Appellees.
 No. 92-35231.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 14, 1993.
Decided July 29, 1993.
 
 Before GOODWIN, FARRIS and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We previously remanded Leeds' Sec. 1983 action for a hearing in the district court on punitive damages and injunctive relief. See Leeds v. Sexson, Memorandum Decision, No. 89-35317 (9th Cir. July 10, 1990). Leeds now appeals pro se only the district court's denial of his claims for injunctive relief and his petitions for attorneys' fees and costs. We affirm.
 
 BACKGROUND
 
 3
 During a state budget crisis in 1982, Leeds was laid off from his position at the Oregon Water Resources Department. Under Oregon law, Leeds and other laid off state employees have certain rights to be considered ahead of other applicants for their positions (assuming the positions still exist) for two years after their layoff.
 
 
 4
 Leeds subsequently testified before the Oregon legislature at reconfirmation hearings of James E. Sexson, then the two-term Director of the Oregon Water Resources Department. Leeds' testimony was critical of Sexson and Dan Kennedy, Leeds' boss during his last three months of employment. The state legislature failed to reconfirm Sexson, and William Young was appointed as the new Director of Water Resources Department.
 
 
 5
 Around the same time as the reconfirmation hearings, the state legislature voted to restore funds to the department, earmarking sufficient funds to support Leeds' old position. Leeds wrote the department and expressed interest in returning to work for the state at his old position, but was sent a short justification for his layoff. Leeds then filed a number of administrative appeals claiming wrongful discharge, but he obtained no relief.
 
 
 6
 Thereafter, Leeds sought to enforce his statutory recall rights, still expressing his desire to return to work at his old job. But Leeds was informed that his position in the department had been eliminated. Leeds' own investigation, however, indicated that his position was still listed on state records.
 
 
 7
 Leeds filed a complaint in federal district court in July 1985, alleging violation of his First Amendment rights because he was not recalled in retaliation for his testimony before the legislature, and procedural due process violations by various state officials who knowingly gave false testimony and evidence during the course of Leeds' administrative appeals. The matter was tried before a jury in May 1988, and the jury returned verdicts in favor of Leeds. The district court granted the defendants' motions for JNOV as to all four verdicts. On appeal, this court "reverse[d] the district court's entry of jnov on the first amendment claim against Kennedy and the district court's refusal to allow the question of punitive damages to go to the jury on that claim," and "remand[ed] the question whether injunctive relief should be granted for that claim." But this court "affirm[ed] the district court in all other respects."
 
 
 8
 On remand, the district court reinstated the 1988 jury verdict against defendant Kennedy and entered a stipulated judgment against him for $25,000 on the First Amendment claim; the judgment was satisfied that same day. At trial on the remanded punitive damages issue in June 1991, the jury returned verdicts in favor of defendant Kennedy.
 
 
 9
 Both parties then briefed the remanded issue of injunctive relief, and Judge Jones held a hearing on the issue in September 1991. The court issued its order on November 5, 1991, denying Leeds' claims for injunctive and other equitable relief.
 
 DISCUSSION
 
 10
 I. Denial of Injunctive and Equitable Relief
 
 
 11
 Leeds argues that the district court erred in failing to grant him the various forms of injunctive and equitable relief. The relief he requested included: reinstatement or front pay, back pay, payment for the value of unused vacation and sick leave days accrued, payment of medical and dental expenses, and student loan interest, cost and fees.[1]
 
 A. The Eleventh Amendment
 
 12
 As this court explained in Wheaton v. Webb-Petett, 931 F.2d 613 (9th Cir.1991):
 
 
 13
 The eleventh amendment does limit the relief available to a section 1983 plaintiff. "Though a Sec. 1983 action may be instituted ... [against state officials], a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury."
 
 
 14
 931 F.2d at 619 (quoting Edelman v. Jordan, 415 U.S. 651, 677 (1974)). The district court correctly relied upon the Eleventh Amendment in refusing to grant Leeds' request for back pay, payment for the value of unused vacation and sick leave days accrued, payment of medical and dental expenses, and student loan interest, cost and fees.[2] Even though Leeds attempted to cast these items as requests for injunctive or "equitable" relief, "[t]he analysis must be of the substance not the form of the relief." Ulaleo v. Paty, 902 F.2d 1395, 1399 (9th Cir.1990). All of the items are really types of retroactive monetary relief that would be paid out of the Oregon state treasury. Such relief is barred by the Eleventh Amendment. See Blaylock v. Schwinden, 862 F.2d 1352, 1353 (9th Cir.1988) ("a suit against state officials that seeks the payment of retroactive money damages, to be paid from the state treasury, is barred by the Eleventh Amendment").
 
 B. Reinstatement
 
 15
 The Eleventh Amendment does not bar an award of prospective injunctive relief, however, see Edelman, 415 U.S. at 677, and an order of reinstatement is a type of prospective injunctive relief. We review the district court's decision not to order reinstatement of Leeds for an abuse of discretion. See Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1346 (9th Cir.1987).
 
 
 16
 The district court's stated reason for not awarding reinstatement was that "Plaintiff concedes that this is not an appropriate remedy." Again on appeal, Leeds acknowledges that reinstatement has been foreclosed because his old position has long since been eliminated at the Oregon Water Resources Department. Moreover, it is not even clear that reinstatement is an appropriate remedy in a failure to recall case such as this (as opposed to a wrongful discharge case), and Leeds proffers no supporting authority. But even if reinstatement was conceivably an appropriate remedy, the determination whether to award it was still within the sound discretion of the district court. Here, the district court could have concluded that reinstatement was not feasible given the potentially acrimonious nature of the relationship between the parties, and the fact that "no position is available due to a reduction in force." Cassino, 817 F.2d at 1346. Thus, the district court did not abuse its discretion.
 
 C. Front Pay
 
 17
 "Front pay" is a remedy of damages awarded "in lieu of reinstatement" that is designed to represent "an award of future lost earnings" which is "temporary in nature." Cassino, 817 F.2d at 1346-47. Front pay may be awarded in circumstances where reinstatement is in order, but not practical. Id. To be entitled to an award of front pay, however, a plaintiff must make reasonable attempts at mitigation. See id. ("front pay awards, like back pay awards, must be reduced by the amount plaintiff could earn using reasonable mitigation efforts").
 
 
 18
 The district court refused to award Leeds front pay for two reasons: (1) Leeds failed to mitigate damages though required to do so, and (2) the Eleventh Amendment. Like its decision not to award reinstatement, the district court's decision whether to award back pay is reviewed for an abuse of discretion. Cassino, 817 F.2d at 1346. Factual findings underlying that decision are reviewed for clear error. In re San Vicente Medical Partners, Ltd., 962 F.2d 1402, 1405 (9th Cir.1992). Again we conclude that the district court did not abuse its discretion.
 
 
 19
 The district court held that Leeds was not entitled to an award of front pay because he had not made reasonable attempts to mitigate damages by seeking other career employment. The district court instead concluded that Leeds "failed to remain in the labor market" and "failed to diligently search for alternative work." We are not persuaded by Leeds' argument that the district court's findings are clearly erroneous. Because this court held in Sangster v. United Air Lines, Inc., 633 F.2d 864, 868 (9th Cir.1980), cert. denied, 451 U.S. 971 (1981), that such conduct constitutes a failure to mitigate damages, the district court's conclusion that Leeds was not entitled to an award of front pay does not constitute an abuse of discretion.[3]
 
 II. Attorneys' Fees and Costs
 
 20
 Leeds argues that the district court erred when it refused to grant him costs and attorneys' fees. The district court's decision whether to award costs and attorneys' fees is within the court's sound discretion. Drucker v. O'Brien's Moving & Storage, Inc., 963 F.2d 1171, 1173 (9th Cir.1992) (attorney's fees); Maxwell v. Hapag-Lloyd Aktiengesellschaft, 862 F.2d 767, 770 (9th Cir.1988) (costs). We conclude that there was no abuse of that discretion here.
 
 
 21
 Leeds did succeed on the merits in part as to one of the defendants in this matter; he was awarded $25,000 on his First Amendment claim against defendant Kennedy. Judgment was entered as to defendant Kennedy on March 19, 1991. Under local rules, Leeds had a limited, prescribed amount of time in which to petition the court for costs and attorneys' fees. He was required to petition the court for attorneys' fees within thirty days after entry of that judgment, see Dist. of Ore.Local Rule 265-4, and to serve on adverse parties and file with the court a bill of costs within eleven days after notice of the entry of that judgment. See Dist. of Ore.Local Rule 265-1. Leeds did not file his petition for attorneys' fees and bill of costs until December 1, 1991. The district court therefore did not abuse its discretion by denying Leeds' petitions because they were not timely filed in accordance with local rules.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Leeds also attempts to collect prejudgment interest against defendant Kennedy from the date of the verdict to the date judgment was satisfied. In Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835 (1990), the Supreme Court held that interest runs from the date of judgment rather than the date the verdict was rendered. Because judgment here was satisfied on the same day it was entered, no interest was due
 
 
 [2]
 The district court's determination that an award of back pay is barred by the Eleventh Amendment is purely a question of law that is reviewed de novo. United States v. City of Spokane, 918 F.2d 84, 86 (9th Cir.1990), cert. denied, 111 S.Ct. 2888 (1991)
 
 
 [3]
 But even if the court erred in concluding that Leeds failed to mitigate his damages, an award of front pay in this case is barred by the Eleventh Amendment. As the Sixth Circuit held in Freeman v. Michigan Dep't of State, 808 F.2d 1174, 1179 (6th Cir.1987), an award of front pay is "barred by the Eleventh Amendment ... since any payment ... would come from the state treasury." Even though a front pay award sounds like permissible "prospective" relief, it nevertheless constitutes an award of damages for a past constitutional violation--and the award is nevertheless paid directly from the state treasury, rather than from private individuals