Jill TRAXLER, Plaintiff–Appellant,

v.

MULTNOMAH COUNTY, Defendant–Appellee.

No. 08–35641.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 2, 2009.

Filed Feb. 26, 2010.

Daniel J. Snyder, Law Offices of Daniel Snyder, Portland, OR, for the plaintiff-appellant.

Agnes Sowle, County Attorney, and Jenny Morf, Assistant County Attorney, for defendant-appellee.

Before: HAWKINS, M. MARGARET McKEOWN and JAY S. BYBEE, Circuit Judges.

McKEOWN, Circuit Judge:

■ This case presents two issues concerning damages under the Family Medical Leave Act of 1993 ("FMLA"). 29 U.S.C. §§ 2601–2654 (2006). In an issue of first impression, we consider whether the court, rather than the jury, determines the amount of the front pay award[1] and

---

1. Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). "In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers ... courts have ordered

whether the district court's calculation of that award was clearly erroneous. Second, we address whether the district court erred in denying liquidated damages without making specific findings as to the employer's good faith conduct and reasonable belief that it was not violating the statute. We conclude that under the FMLA, front pay is an equitable remedy to be determined by the court. We affirm the district court's determination and calculation of the front pay award. We reverse and remand the district court's decision not to award liquidated damages. Absent an articulated rationale to support this conclusion, we cannot meaningfully review the challenge to liquidated damages.

## BACKGROUND

Jill Traxler began working in the Multnomah County Sheriff's Office ("the County") in 1987 and was promoted to the Human Resources unit in 1988. By 1998 she had become the interim Personnel Unit Manager and later was promoted to Human Resources Manager I.

The FMLA entitles certain employees to "12 workweeks of leave during any 12–month period" if the employee has a serious health condition, gives birth or adopts a son or daughter, or needs to care for a "spouse, or a son, daughter, or parent [who] has a serious health condition." 29 U.S.C. § 2612(a)(1). Beginning in 2002, Traxler took medical leave under the FMLA, and again in 2005, she took leave due to a serious physical health condition. During her employment, Traxler never took more than the leave permitted under the FMLA.

On June 13, 2005, the County notified Traxler that her position would be eliminated effective July 1, 2005, and it had a uniformed officer escort Traxler out of the office. She was placed on paid administrative leave, and then transferred to a lower paying position. Traxler continued to take leave under the FMLA, and in September 2005, she received an unfavorable performance review in her new position. Traxler filed a written response to the performance review, but to no avail. The County terminated Traxler in late September 2005.

Traxler filed suit under the FMLA and the Oregon counterpart. After a four-day trial, the jury found that the County had taken adverse employment actions against Traxler in response to her legitimate use of protected leave under the FMLA. The jury awarded Traxler $250,000 in damages (back pay) up to the time of trial and $1,551,000 in front pay. The court declined to enter a judgment for liquidated damages.

The County filed a post-trial motion requesting judgment as a matter of law or a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59, arguing that the district court erred in submitting the calculation of front pay to the jury and requesting that the district court limit the amount of front pay awarded to Traxler. The district court agreed it had erred in allowing the jury to consider the amount of front pay because front pay is an equitable remedy that must be determined by the court. The district court thus vacated the jury's award of front pay, made findings of fact as to the basis for front pay, and awarded Traxler $267,000 in front pay. The district court also ruled in the alternative that if it was proper for the jury to calculate front pay, the jury's award of $1,551,000 was grossly excessive; the court denied the County's motion for a new trial, conditioned on Traxler's acceptance of a remittitur of $267,000. Traxler timely appealed the district court's finding that front pay is an equitable remedy to be decided by the court, the calculation of the

front pay as a substitute for reinstatement." *Id.*

front pay award, and the denial of liquidated damages.

## ANALYSIS

### I. FRONT PAY

#### A. FRONT PAY IS AN EQUITABLE REMEDY APPROPRIATELY DETERMINED BY COURTS

■ The central question in this appeal is the characterization of front pay under the FMLA—that is, whether it is a legal or an equitable remedy. And, more precisely, even if it is an equitable remedy, should the amount be determined by the court or a jury.[2]

■ On this issue of first impression in this circuit, we hold that under the FMLA, front pay is an equitable remedy that must be determined by the court, both as to the availability of the remedy and the amount of any award. Our view accords with the Fourth, Fifth and the Tenth Circuits, which have addressed this issue under the FMLA. *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir.2007) (noting that "Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts." (internal quotation marks omitted)); *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 964–66 (10th Cir.2002) (holding that the court decides propriety and amount of front pay award, but in making the award, the court must accept the jury's factual findings); *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 307 & n. 3 (4th Cir.1998) (holding that "the district court erred in submitting the issue of front pay to the jury.... On remand, the dis-

trict court should determine ... whether front pay should be awarded and, if so, in what amount."). The approach in these cases follows the general recognition that front pay is best understood as a substitute for the equitable remedy of reinstatement, and thus, is appropriately determined by the court. *Cline*, 144 F.3d at 307 ("[F]ront pay, as an alternative or complement to reinstatement, is an equitable remedy best determined by the district court rather than the jury."). Only the Sixth Circuit differs, holding that the district court determines the propriety of awarding front pay, but that the jury decides the actual amount of the award. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 405–06 (6th Cir.2003).

Our analysis begins with the statute itself. The FMLA does not explicitly grant plaintiffs the right to front pay; any front pay awards must fall within the section on equitable relief. *See* 29 U.S.C. § 2617. The FMLA provision governing an employee's remedy against an employer is divided into two subsections. The first subsection allows "damages" for past costs including, among other things, "wages, salary, employment benefits, or other compensation denied or lost." *Id.* (a)(1)(A)(i)(I). That same subsection also covers non-wage actual monetary losses, interest, and liquidated damages. The second subsection addresses prospective relief, allowing "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." *Id.* (a)(1)(B).

■ Front pay is not included in the enumerated damages under the first sub-

---

**2.** Traxler argues that the County waived the argument that front pay is an equitable remedy by "fail[ing] to object to the determination of the amount of front pay by the jury at the time of trial." The County did not waive this issue. The County raised the issue multiple

times throughout the proceedings, including in its motion for judgment as a matter of law and request for new trial. This question was also the subject of explicit rulings by the district court.

section. § 2617(a)(1)(A). Thus, the court's power under the FMLA to award front pay, as an alternative to reinstatement, is derived solely from the statutory provision permitting the court to award "such equitable relief as may be appropriate." § 2617(a)(1)(B).

The characterization of front pay as an equitable remedy is consistent with the general nature of front pay in the context of other employment-related statutes. Although pure money damages are "'the traditional form of relief offered in the courts of law,'" *Smith v. Barton,* 914 F.2d 1330, 1337 (9th Cir.1990) (quoting *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974)), an award of monetary damages may constitute equitable relief if it is "'incidental to or intertwined with injunctive relief.'" *Chauffeurs Local No. 391 v. Terry,* 494 U.S. 558, 571, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (*quoting Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)). The leading employment case on this point is *Pollard v. E.I. du Pont de Nemours & Co.,* a Title VII case in which the Supreme Court distinguished front pay from compensatory damages. 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001). The Court held that "[i]n cases in which reinstatement is not viable ... courts have ordered front pay as a substitute for reinstatement." *Id.* at 846, 121 S.Ct. 1946. In other words, "[a] front pay ... award is the monetary equivalent of the equitable remedy of reinstatement.'" *Id.* at 853 n. 3, 121 S.Ct. 1946 (quoting *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 383 (3d Cir.1987)). As a practical matter, front pay is awarded at the court's discretion only if the court determines that reinstatement is inappropriate, such as where no position is available or the employer-employee relationship has been so damaged by animosity that reinstatement is impracticable. *Whittlesey v.*

*Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984).

Recognizing that front pay is an equitable remedy, it makes little sense to say that the availability of front pay is a judicial determination and the amount a jury determination. The statute does not support such a result. Splitting the remedy into an equitable and a legal component is a false dichotomy. This is a classic case where a monetary award is inextricably linked with the equitable determination regarding reinstatement. As a proxy for reinstatement, front pay is an equitable award within the purview of the court, not the jury.

To begin, the determination whether reinstatement is feasible, either immediately or in the future, is a balance of equitable concerns. Although there is a strong preference in favor of reinstatement, sometimes it simply isn't practical. *Downey,* 510 F.3d at 544 (noting that under the FMLA, "reinstatement is the preferred equitable remedy" but when not feasible, an award of front pay may be considered). Deciding what amount would compensate for the inability to get a job back is not a form of linear fact-finding appropriately left to the jury. Just as reinstatement invokes equitable factors, so does front pay as a proxy. Judicial discretion is at the heart of the decision. In a case under the Age Discrimination in Employment Act ("ADEA"), the Fourth Circuit observed the following:

Because of the potential for windfall ... [the use of front pay] must be tempered. It can be awarded to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment. If a plaintiff is close to retirement, front pay may be the only practical approach. The infinite variety of factual circumstances that

can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages.

*Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir.1991).

Traxler stakes her position that the amount of front pay is a legal remedy on a single line in our opinion in *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir.1987). *In Cassino*, an ADEA case, we considered whether a trial court is required to instruct the jury "that a finding of hostility [between the employer and the employee is] a prerequisite to a front pay award." *Id.* at 1347. We concluded that the jury does not need to be instructed on hostility because it is the district court's duty to determine whether there is hostility between the parties. *Id.* The court then went on to remark that "[i]f the court concludes that reinstatement is not feasible, the jury then decides the amount of the front pay award." *Id.* This observation—plainly dicta—is not inconsistent with our holding that front pay is an equitable remedy. A trial court, sitting in equity, may nevertheless employ an advisory jury. The ultimate decision, however, rests with the court. *See Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1069 (9th Cir.2005) ("there is no right to have a jury determine the appropriate amount of back pay.... Instead, back pay remains an equitable remedy to be awarded by the district court in its discretion."); *see also Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 n. 1 (3d Cir.2009) ("[t]he jury's role was only advisory on the issue of damages because back pay and front pay are equitable remedies to be determined by the court.").

Picking up on a discussion in *Newhouse v. McCormick & Co.*, 110 F.3d 635, 642–43 (8th Cir.1997), the district court here noted that there is a split in the circuits in ADEA cases on whether the judge or the jury should determine the amount of front pay award. Nearly all of the circuits that have considered front pay under the ADEA treat the remedy as wholly equitable, leaving both the availability and amount of front pay to the court. *See e.g., id.* at 643; *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1426–27 (10th Cir. 1991); *Duke*, 928 F.2d at 1424; *Fortino v. Quasar Co.*, 950 F.2d 389, 398 (7th Cir. 1991); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 823 & n. 4, 824 (5th Cir.1990); *Ramsey v. Chrysler First, Inc.*, 861 F.2d 1541, 1545 (11th Cir.1988); and *Dominic v. Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1257–58 (2d Cir.1987). The Third Circuit can now be added to the list. *Donlin*, 581 F.3d at 78 n. 1. Not surprisingly, only one circuit is squarely in opposition— the Sixth Circuit. *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir.1993) (holding that the initial "determination of the propriety of an award of front pay is a matter for the court," but the "amount of an award of front pay is a jury question"). The situation in the First Circuit is unclear.[3]

*Cassino* must also be distinguished based on the difference in the language of the statutes providing the front pay remedy. The ADEA, unlike the FMLA, is ambiguous as to whether front pay is sanctioned as an equitable or a legal remedy. The ADEA allows a court to grant "such legal *or* equitable relief as will effectuate the purposes of this chapter." *See* 29 U.S.C. § 626(c)(1) (emphasis added). The

**3.** *Compare Chambers v. City of Calais*, 187 F.3d 621 (1st Cir.1998) (per curiam) (the ADEA allows for an award of front pay, which is equitable relief to be calculated by the judge) *with Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 354 (1st Cir.1998) (noting that front pay is an equitable remedy awarded by the court, but because under Massachusetts state law, the jury awards front pay, the court submitted the determination of amount of the front pay award to the jury).

statute goes on to provide that "a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action." *Id.* § 626(c)(2). In contrast, the remedies section in the FMLA enumerates in detail the types of legal damages permitted, and because front pay is not one of the types of legal damages enumerated, any award of front pay must be grounded in the court's power to grant "such equitable relief as may be appropriate." 29 U.S.C. § 2617(a)(1)(B). In addition to this significant statutory difference, notably, the FMLA does not include any reference to "trial by jury of any issue of fact." 29 U.S.C. § 626(c)(2) (ADEA).

In sum, under the FMLA the equitable award of front pay, including the amount, rests solely with the court, not the jury. The passing reference to the contrary in Cassino, which involved the ADEA rather than the FMLA, does not change our conclusion.

### B. THE DISTRICT COURT DID NOT ERR IN ITS CALCULATION OF FRONT PAY

■■■■ The district court's determination of the amount of front pay is supported by both the court's reasoning and substantial evidence in the record. Although reasonable minds might disagree regarding the amount, the district court did not abuse its discretion when it determined that the front pay award should be $267,000.[4]

The district court rejected as unreasonable Traxler's premise that she would be unable to find a job with similar pay and benefits for the rest of her life, noting that she "is young and has good job skills," but acknowledging that there may be some disparity in her earning capacity for a period of time. Her evidence lacked "specifics sufficient to satisfy the court."

Traxler's expert witness did not fare well in the district court's analysis: "Although there is no dispute about [the witness's] calculations, his assumptions are questionable and appear to be based on a theoretical worst case without any evidentiary support." Specifically, the district court did not accept the expert's conclusion that Traxler would work for an additional 16.64 years instead of 12.75 years—the national average for a woman her age. Although the expert assumed that Traxler would receive merit based pay increases every year, there was evidence that Traxler had reached the top of her pay grade, and yearly budget reductions made further increases unlikely. Consequently, the district court found that it was unreasonable to assume that Traxler would be unable to find a comparable position "for the rest of Traxler's working life."

The district court was mistaken when it stated that "Traxler gave no testimony about her efforts to find a full-time job more equivalent to her work at the County."[5] Traxler offered testimony regarding her job search activities, although it was general in nature. Nevertheless, there remains ample additional support for the

---

4. We review for an abuse of discretion the district court's determination of whether to award equitable relief. *Park v. Anaheim Union High Sch. Dist.*, 444 F.3d 1149, 1156 (9th Cir.2006). The district court's award of damages also is reviewed for an abuse of discretion, *McLean v. Runyon*, 222 F.3d 1150, 1155 (9th Cir.2000), but we review for clear error the factual findings related to the front pay

award. *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148, 1155 (9th Cir.1999).

5. The district court may have been alluding to the fact that Traxler's testimony pertained to her attempt to find "any kind of work"—not necessarily a "full-time job more equivalent to her work at the County."

district court's calculation of the front pay award.

The district court also noted that Traxler's attorney asked the jury for a sum between $670,746 and $1,163,514, even less than the jury awarded. The court was mindful of the jury's verdict but emphasized that there was "little doubt" that the County's treatment of Traxler influenced the jury's decision. In a thoughtful opinion and order, the district court considered all of the evidence and awarded front pay of $267,000, which represents almost three years of salary and benefits or nearly four years of salary. The district court's findings were not clearly erroneous and the court did not abuse its discretion with respect to the front pay award.

## II. LIQUIDATED DAMAGES

The FMLA contains a "liquidated damages" provision, subjecting an employer who violates the Act to double damages unless the employer can prove that its employment action was taken in "good faith" and that it had "reasonable grounds for believing that [its action] was not a violation." 29 U.S.C. § 2617(a)(1)(A)(iii).

Traxler requested liquidated damages for the County's violation of the FMLA. The district court denied the request. Traxler appeals the district court's decision, arguing that the district court abused its discretion by declining to award liquidated damages without specific findings that the County's violation of the FMLA was in good faith and that the County reasonably believed that its conduct was not in violation of the FMLA.

Here, the district court never made an explicit finding of good faith or reasonable belief, nor did the district court explain its reasoning. The transcript reflects the following limited exchange regarding liquidated damages:

MR. SNYDER: Your Honor, excuse me. I think the only other issue, then,

would be ... whether or not the Court is going to make an award of liquidated damages.

THE COURT: An award of what?

MR. SNYDER: Liquidated damages, Your Honor.

THE COURT: No, I'm not.

Unfortunately, neither party inquired as to the rationale or basis for this decision. The County argues that because Traxler did not request specific findings related to liquidated damages, she did not preserve the issue for appeal. Without doubt, Traxler could have saved the parties, the district court, and us considerable resources had she asked the district court to set out the factual and legal basis for denial of liquidated damages. Nonetheless, even if Traxler is deemed to have waived a challenge as to the specificity of findings, she did not waive her general challenge of the district court's failure to award liquidated damages.

As an appellate court, we review the decision to deny liquidated damages under the abuse of discretion standard. *Arban*, 345 F.3d at 408. To do so, however, we must be able to ascertain how the district court exercised its discretion. In *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*, we explained the importance of having a reasoned decision as the basis for appellate review:

[W]e must examine the adequacy of the rationale behind the district court's decision rather than simply reach the conclusion that seems best to us.... We cannot review the district court's exercise of its discretion in weighing [the employer's proof of good faith and reasonable belief that it was not violating the statute] unless we know that it has done so and why it reached its result.

... [By failing to give] *any* indication of the basis for its decision ... the

district court left us with no reasoned decision to review, and no basis upon which to evaluate its exercise of discretion, thereby making it impossible for us to do our judicial duty. Where, as here, a district court does not explain its reasoning, we must remand to that court to reconsider its decision and to set forth its reasons for whatever decision it reaches, so that we can properly exercise our powers of review.

490 F.3d 718, 724–25 (9th Cir.2007) (citations omitted). Put another way, "meaningful appellate review for abuse of discretion is foreclosed when the district court fails to articulate its reasoning." *United Nat'l Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 919 (9th Cir.1998).

 It is particularly important for the district court to provide a rationale for its decision when effectuating a congressional mandate that the decision reflect certain enumerated factors. In a case construing the Speedy Trial Act, the Supreme Court stated:

> Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, *clearly articulate their effect in order to permit meaningful appellate review.* Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy, thereby failing to act within the limits prescribed by Congress.

*United States v. Taylor*, 487 U.S. 326, 336–37, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988) (emphasis added).

The FMLA is unambiguous that once it is determined that an employer violated the statute, liquidated damages will be awarded unless the employer proves both "good faith" and "reasonable grounds for

believing that [its action] was not a violation" of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). We are unable to "ascertain whether [the] district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy," i.e., the factors of "good faith" and "reasonable belief." The record does not permit us to infer a rationale. We therefore remand to the district court for an explanation, and findings if appropriate, supporting the denial of the award.

 Finally, we reject Traxler's additional arguments on the issue of liquidated damages. Traxler posits that the district court's finding that front pay is appropriate is incompatible with the district court's refusal to award liquidated damages. Front pay, however, is the appropriate substitute when, as here, "reinstatement is not practical due to friction caused by Traxler's use of intermittent family leave." It is possible for the employment situation to create hostility even if the employer violated the FMLA in good faith. These two principles are not incompatible. Traxler also argues that a finding of good faith is irreconcilable with the jury's finding that the County violated the FMLA. This argument simply ignores the statute, which puts the burden on the employer to avoid liquidated damages but does not assume that liability under the FMLA and denial of liquidated damages are mutually exclusive. Indeed, an employer may violate the FMLA through acts that are taken in good faith. *See* 29 U.S.C. § 2617(a)(1)(A).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED** for supplemental findings and an explanation on liquidated damages. Each party shall bear its own costs on appeal.